O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5671  ODW (AJWx) | Date | September 9, 2008 |
|---|---|---|---|
| Title | O.Z., a minor, by and though her Guardian ad Litem v. Board of Trustees of the Long Beach Unified School District, *et al.* | | |

| Present: | The Honorable Otis D. Wright II, United States District Judge |
|---|---|

| Raymond Neal | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (In Chambers):**    Order DENYING Plaintiff's Motion for Preliminary Injunction

I.    INTRODUCTION

    This case stems from a middle school student's collaborative creation of a slide show, that was later posted on the website *YouTube*, depicting the killing of the student's seventh grade English teacher.  Pending before the Court is Plaintiff's Motion for Preliminary Injunction.  On August 29, 2008, Plaintiff filed an Application for Temporary Restraining Order ("TRO").  That same day, oral argument was heard and the application was denied.  At the hearing on the TRO, the Court scheduled a hearing for preliminary injunction for September 8, 2008 and set a briefing schedule accordingly.  Defendants filed an Opposition on September 4, 2008 to which Plaintiff filed a Reply brief on September 5, 2008.  After considering the materials submitted by the parties, the case file, and the arguments advanced by counsel at the hearing, Plaintiff's Motion for Preliminary Injunction is DENIED.

II.    FACTS

    During Spring Break vacation in March 2008, Plaintiff O.Z., a student at Hughes Middle School in Long Beach, California, along with a friend and fellow classmate created a slide show about their English teacher, Mrs. Rosenlof.  The slide show is essentially a dramatization of the murder of Mrs. Rosenlof.  The first slide photo states,

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-5671  ODW (AJWx) | Date | September 9, 2008 |
|---|---|---|---|
| Title | O.Z., a minor, by and though her Guardian ad Litem v. Board of Trustees of the Long Beach Unified School District, *et al.* | | |

"Mrs. Rosenlof dies."  Throughout the slide show there are photos of Plaintiff dressed up in a costume, depicting a woman meant to resemble Mrs. Rosenlof.  There is red text on each slide photo that describes the scene.  One slide says, "Jelly Donut's knife: haha fat bastard. here i come!"  In this same photo, the viewer can see a butcher knife lunging at Mrs. Rosenlof's character from the camera's point of view.  The butcher knife is then laid on the fallen victim while the text reads, "hehehe. i'm a shank yooooooooo!"  At the end of the slide show, it reads, "your [sic] dead, BITCH!  :D".

On May 23, 2008, Mrs. Rosenlof was at home working on the computer when she decided to "Google" her name to see if any information could be obtained.  She discovered a *YouTube* slide show video entitled "[O.Z.] Kills Mrs. Rosenlof."  Mrs. Rosenlof clicked on the video.  The description of the slide show stated:

> [O.Z.], a student of Ms. Rosenlof, kills her over *YouTube* somehow.  This video shows the video of Ms. Rosenlof dying.  This was made by [O.Z.] and [Student 2] in her first and second period classes.

Mrs. Rosenlof was allegedly upset by the video, became ill, and was unable to sleep for several nights.  On Saturday, May 24, 2008, Mrs. Rosenlof sent an e-mail to her principal at Hughes Middle School informing the principal of the video.  On Tuesday, May 27, 2008, the principal conducted an investigation and spoke to O.Z. and her mother.  After the conference with O.Z. and O.Z.'s mother, the principal initiated disciplinary action against O.Z.  The principal recommended that O.Z. be suspended and given an intervention transfer to another school.  The parents initially agreed to the transfer, but later objected.  Due to their opposition to the transfer, the parents requested and were granted a hearing before an Administrative Review Panel.  On June 19, 2008, the Administrative Review Panel conducted a hearing.  At the hearing O.Z. was represented by legal counsel and her parents were in attendance.  The review panel decided to uphold the principal's decision to transfer O.Z. to another school.  The parents were advised of this decision in a written correspondence dated June 20, 2008.

During the week of August 18, 2008, the parents received notice that O.Z. would be attending nearby Hoover Middle School for her eighth grade year.  The parents

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5671  ODW (AJWx) | Date | September 9, 2008 |
|---|---|---|---|
| Title | O.Z., a minor, by and though her Guardian ad Litem v. Board of Trustees of the Long Beach Unified School District, *et al.* | | |

enrolled O.Z. into Hoover on August 27, 2008.  Then, on August 29, 2008, Plaintiff filed an ex parte application for a TRO seeking to compel the school district to place O.Z. back at Hughes Middle School.  The TRO was denied for many of the same reasons set forth in this Order and because Plaintiff's parents knew since late June 2008 that their child was going to be transferred to another school, yet waited until late August to file a TRO.  Plaintiff's parents argued that, although they knew of the transfer two months prior, they did not know the specific school to which O.Z. would be transferred until August 18, 2008.  Plaintiff now requests a preliminary injunction, seeking an order from the Court requiring the school district to re-enroll O.Z., and to let her complete her eighth-grade year, at Hughes Middle School.

III.   DISCUSSION

   A.   **Legal Standard: Preliminary Injunction**

In moving for a preliminary injunction, "the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party.  These standards are not separate tests but the outer reaches of a single continuum."  *Stuhbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839-40 (9th Cir. 2001) (internal quotation marks and citations omitted).  The Court must also weigh whether the public interest favors issuance of the injunction.  *Southwest Voter Registration Ed. Project v. Shelly*, 344 F.3d 914, 917 (9th Cir. 2003).  Regardless of which test is used, the analysis "creates a continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiff[] must convince the district court that the public interest and balance of hardships tip in [her] favor."  *Id*. at 918.

   B.   **Analysis**

      i.   *The Merits of Plaintiff's Claims*

Plaintiff argues that her creation of the slide show is protected speech under the First Amendment.  Therefore, as Plaintiff asserts, any discipline for such speech by a

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5671  ODW (AJWx) | Date | September 9, 2008 |
|---|---|---|---|
| Title | O.Z., a minor, by and though her Guardian ad Litem v. Board of Trustees of the Long Beach Unified School District, *et al.* | | |

school official is unconstitutional.  With respect to school officials' authority to discipline a student's expression reasonably understood as threatening violent conduct, the appropriate First Amendment standard is the one set forth by the U.S. Supreme Court in *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969).  *See LaVine v. Blaine School District*, 257 F.3d 981, 988-89 (9th Cir.2001).  *Tinker* held that student expression may not be suppressed unless school officials reasonably conclude that it will "materially and substantially disrupt the work and discipline of the school." *Tinker*, 393 U.S. at 513.

The case at bar is very similar to *Wisniewski v. Board of Educ. of Weedsport Cent. School Dist.*, 494 F.3d 34 (2nd Cir. 2007).  In *Wisniewski*, an eighth-grade student in upstate New York was using AOL Instant Messaging ("IM") software on his parents' home computer.  The student created a small icon drawing on his IM profile of a pistol firing a bullet at a person's head, above which were dots representing splattered blood. Beneath the drawing appeared the words "Kill Mr. VanderMolen."  Mr. VanderMolen was the student's English teacher at the time.

The icon was available for viewing by the student's IM "buddies" for three weeks. During that period, a classmate of the student informed Mr. VanderMolen of the icon. Mr. VanderMolen was distressed and forwarded the icon to the school principals.  In response to questioning, the student acknowledged that he had created and sent the icon, but that he had no violent intent.  He explained that he made the icon as a joke.

In the end, the school held an administrative hearing and the student was suspended for one semester.  The student and his parents appealed the school's decision and brought suit alleging violations of the student's First Amendment rights.

The court in *Wisniewski*, in a detailed analysis, held:

> Even if [the student's] transmission of an icon depicting and calling for the killing of his teacher could be viewed as an expression of opinion within the meaning of *Tinker*, we conclude that it crosses the boundary of protected speech and constitutes student conduct that poses a reasonably foreseeable risk

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5671 ODW (AJWx) | Date | September 9, 2008 |
|---|---|---|---|
| Title | O.Z., a minor, by and though her Guardian ad Litem v. Board of Trustees of the Long Beach Unified School District, *et al.* | | |

[of] . . . "materially and substantially disrupt[ing] the work and discipline of the school."

*Wisniewski*, 494 F.3d at 38-39 (quoting *Tinker*, 393 U.S. at 513).

The court in *Wisniewski*, in support of its ruling, cited *LaVine v. Blaine School Dist.*, 257 F.3d 981 (9th Cir. 2001). In *LaVine*, the Ninth Circuit examined a case where a student wrote a poem for his English class describing the shooting of students. The court explained that to suppress speech falling under *Tinker*, "school officials must justify their decision by showing facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." *LeVine*, 257 F.3d at 989 (quoting *Tinker*, 393 U.S. at 514). "*Tinker* does not require school officials to wait until disruption actually occurs before they may act." *Id.* (citing *Chandler v. McMinnville School Dist.*, 978 F.2d 524, 529 (9th Cir. 1992). "In fact, they have a duty to prevent the occurrence of disturbances." *Id.* (citations omitted). "Forecasting disruption is unmistakably difficult to do. *Tinker* does not require certainty that disruption will occur, 'but rather the existence of facts which might reasonably lead school officials to forecast substantial disruption.'" *Id.* (citing *Karp v. Becken*, 477 F.2d 171, 174 (9th Cir. 1973)).

Here, Plaintiff argues that the slide show was a joke. Plaintiff also undoubtedly feels remorse for helping to create the slide show. Nonetheless, it would appear *reasonable*, given the violent language and unusual photos depicted in the slide show, for school officials to forecast substantial disruption of school activities. Additionally, as in *LaVine*, the Court need not ask whether this slide show was a "true threat," because the Court concludes that even if the slide show was protected speech, the school's actions were justified. *See LaVine*, 257 F.3d at 989 n.5.

Further, the school's actions not only discipline O.Z., but also protect the teacher and address safety concerns. Facts have been presented that Mrs. Rosenlof feared for her safety and became physically ill because of the slide show. If anything had happened to Mrs. Rosenlof at school, either a physical attack by O.Z. or ridicule directed at Mrs. Rosenlof by other students, it would substantially disrupt the school's activities. These

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5671 ODW (AJWx) | Date | September 9, 2008 |
|---|---|---|---|
| Title | O.Z., a minor, by and though her Guardian ad Litem v. Board of Trustees of the Long Beach Unified School District, *et al.* | | |

are just some of the facts that might reasonably lead school officials to forecast substantial disruption.

In Plaintiff's defense, she argues she had no intent to communicate the contents of the slide show to her teacher, classmates, or anyone outside of her home. It is alleged that O.Z.'s friend and co-creator of the slide show is the one who actually posted it on *YouTube*. Even still, Plaintiff intended to share the slide show with her friend, a third-party. Thus, Plaintiff cannot argue that she had no intent to use the slide show outside of her home.

Further, the fact that Plaintiff's creation and transmission of the slide show occurred away from school property does not necessarily insulate her from school discipline. Courts have recognized that off-campus conduct can create a foreseeable risk of substantial disruption within a school. *See Wisniewski*, 494 F.3d 34 (involving student's IM icon with message regarding killing teacher that was created on home computer); *Thomas v. Board of Education*, 607 F.2d 1043, 1052 n.17 (2d Cir. 1979) (noting that "[w]e can, of course, envision a case in which a group of students incites substantial disruption within the school from some remote locale."); *Doe v. Pulaski County Special School Dist.*, 306 F.3d 616 (8th Cir. 2002) (involving a letter, written and kept at home, that threatened killing of fellow student); *Sullivan v. Houston Independent School District*, 475 F.2d 1071 (5th Cir. 1973) (concerning underground newspaper distributed off-campus but near school grounds). Here, Plaintiff's slide show did reach Mrs. Rosenlof and the school principal. Therefore, although O.Z. created the slide show off-campus, it created a foreseeable risk of disruption within the school.

Accordingly, while the Court is not making a definite determination with regard to Plaintiff's claims at this early stage, it appears that Plaintiff's likelihood of success is diminished.

        ii.       *Possibility of Irreparable Harm*

Plaintiff argues that her transfer to Hoover Middle School from Hughes Middle School has caused harm. Plaintiff asserts that she has lost her excitement and enthusiasm

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5671  ODW (AJWx) | Date | September 9, 2008 |
|---|---|---|---|
| Title | O.Z., a minor, by and though her Guardian ad Litem v. Board of Trustees of the Long Beach Unified School District, *et al.* | | |

for her upcoming eighth grade year.  In addition, Plaintiff argues that her schedule at Hoover is not the same as her schedule would have been at Hughes.  Plaintiff has been involved in the Gifted And Talented Education ("GATE") Program for English, History, and Science.  Hoover offers the GATE program, but allegedly does not offer a GATE Science course.  Apparently, Plaintiff is also not able to attend a Chorus class, which she enjoys and was enrolled in at Hughes.  Plaintiff was also on the soccer team at Hughes, whereas, at Hoover, if she wants to join the team, she will have to tryout.

Defendants argue that Hoover has comparable courses and has the GATE program.  Thus, Plaintiff's attendance there will not cause irreparable harm.  Further, as Defendants contend, any injury to Plaintiff is temporary since Plaintiff is in eighth grade for only nine months and will then be allowed to attend a high school of her choice.  Defendants argue that there is really no difference in Hughes and Hoover other than a few elective classes.

The Court realizes that difficulties arise when a student is transferred to an unknown school from a familiar school.  However, Plaintiff has not shown that she will suffer *irreparable* harm.  The Court's opinion would likely be different if Plaintiff were a ninth grade student and the transfer would affect her entire high school career.  This is not the case here, however.  As Defendants note, Plaintiff only has to endure the new school for nine months and then can attend the high school of her choice.  Additionally, while it is pure speculation, there may be more harm done by sending the student back to Hughes since other students are likely to ridicule her with regard to the slide show that has created this underlying scandal.  It may be beneficial for the student to attend Hoover where the students and administration are not so readily aware of the incident.  Ultimately, school officials are in a better position than the federal courts to decide what is best for the student.  *See LaVine*, 257 F.3d at 988; *Wood v. Strickland*, 420 U.S. 308 (1975).

In sum, a possibility of *irreparable* harm has not been shown.  Accordingly, the injunction "continuum" test tips in favor of denying Plaintiff's motion for preliminary injunction.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5671 ODW (AJWx) | Date | September 9, 2008 |
|---|---|---|---|
| Title | O.Z., a minor, by and though her Guardian ad Litem v. Board of Trustees of the Long Beach Unified School District, *et al.* | | |

   *iii. Whether Serious Questions are Raised and the Balance of Hardships*

  As an alternative theory to the foregoing, the moving party can succeed on a motion for preliminary injunction if she can show "that serious questions are raised and the balance of hardships tips sharply in favor of the moving party." *Stuhbarg*, 240 F.3d at 839-40. Based on the Court's above analysis, there have not been *serious* questions raised. While some courts have differed in approaching the First Amendment as applied to students, it appears that the nature of Plaintiff's speech (the slide show) falls in the same category as was discussed by the Ninth Circuit in *LaVine*. The Court is confident that its ruling today fits within the Ninth Circuit's analytical framework. Thus, serious questions do not exist.

  Hardships exist for both parties. If Plaintiff is ordered to return to her old school, Hughes, that school's ability to set disciplinary parameters would be undermined. In addition, Plaintiff's files have already been transferred to Hoover, thus, transferring a student back to Hughes would involve paperwork and the expedited use of school district resources. Plaintiff's hardships, on the other hand, include those that were discussed above within the irreparable harm analysis. In addition, Plaintiff argues that the transfer has put a strain on O.Z.'s parents, because they have to drop O.Z. off at a different school that has a different start time. O.Z.'s parents allegedly suffer because the new school begins at 8:45 am whereas the old school begins at 8:15 am. This arrangement will allegedly cause O.Z.'s mother distress because she needs to be at work by 8:00 am. As the Court has explained, hardships exist on both sides. Accordingly, because serious questions are not raised and the balance of hardships does not tip sharply in Plaintiff's favor, the motion for preliminary injunction should be denied.

   *iv. Weighing the Public Interest*

  In addition to the foregoing analysis, the Court must also weigh whether the public interest favors issuance of the injunction. *Shelly*, 344 F.3d at 917. Here, of course there is a public interest in the protection of First Amendment speech. There is also an interest in keeping public schools safe and free from substantial disruption. As the Ninth Circuit noted in LaVine, "[s]chools must achieve a balance between protecting the safety and

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5671 ODW (AJWx) | Date | September 9, 2008 |
|---|---|---|---|
| Title | O.Z., a minor, by and though her Guardian ad Litem v. Board of Trustees of the Long Beach Unified School District, *et al.* | | |

well-being of their students and respecting those same students' constitutional rights." *LaVine*, 257 F.3d at 987. The Court feels this balance was accomplished in this case.

In addition, as the Court discussed at the hearing on this matter, the Court has a real problem interfering with the school's disciplinary procedures. School officials are in a better position than the courts to decide what school-related speech restrictions are appropriate. *See LaVine*, 257 F.3d at 988. A court's interference with the school's disciplinary decisions in this case would undermine the administration of the school and encourage parents to simply file suit if they are unhappy with a school's disciplinary action. With that said, deference to the school's decisions does not mean courts should turn a blind eye when school officials violate the Constitution. The Court would necessarily step in if there was in fact a clear violation of Plaintiff's First Amendment rights. However, as discussed in detail above, the Court feels that even if the slide show was protected speech, the school's actions were justified under the *Tinker* test. Accordingly, the public interest does not favor the issuance of an injunction in this case.

IV. CONCLUSION

For the forgoing reasons, the Court finds that Plaintiff has not shown either a likelihood of success on the merits or irreparable injury. Plaintiff also has not raised serious questions or shown that a balance of hardships tips in her favor. In addition, given the facts and the disturbing slide show Plaintiff helped create that essentially dramatizes the murder of her eighth grade English teacher, public interest factors weigh in favor of not granting a preliminary injunction. Therefore, Plaintiff's Motion for Preliminary Injunction is DENIED.

|  | ---- | : | 00 |
|---|---|---|---|
| | Initials of Preparer | RGN | |